CASE No. 850.

McGRATH & BYRUM v. BARNES.

1. Where an executor gave his promissory note for the payment of money which was expressed to be the amount due by his testator's estate to the payee "for medical services rendered, most of which during last illness," parol evidence of a contemporaneous agreement that the note was to be paid only upon a certain condition, is incompetent.

2. When parol evidence may be received to show a verbal agreement not expressed in a note, considered; and cases reviewed.

3. When and to what extent an executor is personally bound by his written promise to pay a debt of his testator, considered; and cases reviewed.

4. Such promise, when based upon the possession of assets and his duty to pay, without other consideration, is binding only to the extent of the amount actually due by testator.

5. Though the debt due by testator at the time the executor qualified had become barred by the statute of limitations at the date of the writtten promise to pay, it will be supported as a good consideration for such promise.

----

Before FRASER, J., Anderson, February, 1879.

This was an action commenced in April, 1877, by the plaintiffs against James T. Barnes, to charge him personally with the payment of the note set out in the opinion of the court. Plaintiffs had purchased the note from H. H. Scudday, for valuable consideration some time after its maturity. The defence was that the defendant gave the note as executor of C. V. Barnes for

balance struck upon a settlement of mutual accounts between Scudday and C. V. Barnes, upon express condition that any other accounts afterwards discovered, should be credited ; and if the voucher should not be approved by the judge of Probate, this note or memorandum was to be given up or destroyed ; that Scudday should be notified of the time of trial before the Probate Court, so that he might appear and defend his accounts ; that he was so notified but failed to appear, and the vouchers were disallowed. At the trial these matters were offered to be proved by parol testimony. Plaintiffs objected ; their objections were overruled and they excepted.

Scudday's accounts were for the years 1855 to 1856, inclusive, and amounted to $550.50 ; due by Scudday to C. V. Barnes, $206.92, and to J. T. Barnes $70.28, leaving balance due to Scudday $273.30, for which the note was given June 26th, 1875. C. V. Barnes died in February, 1866 ; J. T. Barnes and C. V. Barnes, sons, qualified as executors within a month afterwards. August 19th, 1875, there was a balance in executors hands of $5925.65, of which $4595.36 was set aside to widow, to revert to the estate at her death ; and adding the amounts already received by legatees, the sum of $203.80 was the share of each child. At this settlement the judge of Probate (sometimes called Ordinary) refused to allow J. T. Barnes credit for the notes.

The charge of the Circuit judge to the jury was as follows :

1. It is doubtful whether the note sued on was not *nudum pactum*, inasmuch as there was no consideration *personal* to the defendant.

2. That S·udday, the payee of the note or memorandum, and the defendant differed as to whether they had frequent conversations about the mutual claims in the long interval of time between 1866, when the testator died, and 1875, when the memorandum or note was signed by the defendant, one of the executors ; but without charging them upon this issue of this fact, or giving any intimation of opinion upon the subject, he charged as matter of law, substantially, that even if such conversations as Scudday claimed had taken place, and there were promises to pay the balance, (which defendant denied,) yet these conversations were merely parol, and could not, after the adoption of the code in

March, 1870, have the effect of keeping the original debt alive longer than four years after that time, and that on June 26th, 1875, when the memorandum or note sued on was signed, the original claim on the accounts was barred, and the right of action gone.

3. That at that time the original claim being barred, one of the executors could not, even by contract in writing, make a new debt to bind the estate. That an individual who owes a debt, which becomes barred, may make a new debt of his own by a new promise in writing, (the old debt being the consideration of the new promise,) but that as to a debt against a dead man's estate, when the right of action against the executors is clearly barred, the executor cannot make a new debt against the estate by a new promise. It is not like the promise of an individual to make a new debt with sufficient consideration against himself, but is unauthorized, without consideration, and *nudum pactum.* It is true the estate was said to be solvent, but it did not follow that Barnes, the executor, had any interest in it. The estate may have been given to others, or the defendant may have been fully advanced. There was absolutely nothing to show that the executor had any interest in the estate, and it could not be assumed.

The jury found for the defendant.

The plaintiffs appealed, alleging error in the admission of the parol testimony and in the charge to the jury.

*Mr. J. W. Harrison,* for appellants.

1. That the court erred in admitting parol testimony to vary the terms of the written contract. 1 *Bay* 303 ; 2 *M. Const. R.* 31 ; *Id.* 265 ; *Harp.* 401 ; 3 *McC.* 469 ; 6. *Ves.* 327, *and notes ;* 2 *E. C. L. R.* 427 ; 5 *E. C. L. R.* 268 ; 2 *Strob.* 122 ; 4 *Strob.* 99 ; 8 *Rich.* 407 ; 9 *Rich.* 50 ; 12 *Rich.* 31.

2. That the court erred in charging that on June 26th, 1875, the original claim on the account was barred. 7 *Wait's Act. & Def.* 266 ; 3 *Strob.* 196 ; 4 *Strob.* 67 ; *Hays* v. *Clinkscales,* (not reported ;) 14 *Eng. R.* (*Moake*) 304–326 ; 3 *Hill* 16 ; *Dud.* 121.

3. That the court erred in charging that the debt being barred, one of the executors could not, even by contract in writing, make

a new debt to bind the estate.   13 *Am. R.* 417, and authorities referred to.

*Mr. S. McGowan,* contra.

*Mr. A. T. Broyles,* in reply.

March 25th, 1880.   The opinion of the court was delivered by
WILLARD, C. J.   The action was upon the following promissory note:

"$273.30.

ANDERSON, S. C., January 26th, 1875.

"One day after date, I promise, as the executor of the estate of C. V. Barnes, to pay H. H. Scudday, or bearer, the sum of two hundred and seventy-three 30-100 dollars, due by said estate to H. H. Scudday for medical service rendered, most of which during last illness.

(Signed,)     "JAS. T. BARNES, *Executor.*"

Evidence was admitted, subject to objection, tending to show that the note was given in pursuance of an agreement that the payment of the note should be conditional upon the allowance by the Ordinary of the claim made against the estate by the payee of the note.   The objection urged was that the admission of this testimony violated the rule that written instruments cannot be varied by oral testimony.

It appears to be well settled in this state, that in an action on a promissory note between parties affected by the rights and equites existing between the original parties to the note, where the note does not state the consideration upon which it was given, or where only a general consideration is stated, such as *value received,* it is competent to prove in defence that the note was given as part of an agreement by which the payment was to be conditional instead of absolute, and such agreement, when it appears to have been the consideration of such note, may be resisted to show either partial or entire failure of consideration on which the note was made.

That promissory notes and other obligations for the payment of money absolutely are frequently given upon considerations of an expectant character, as upon contracts, calling for acts to be performed by the party to whom the note is given, and are put in an absolute form for the convenience of the parties, is a fact well known. When a party gives his note upon the promise of the payee to perform a certain act, and the payee fails to perform, it is reasonable that the transaction should be considered as a whole for the purpose of ascertaining what is due between the parties. This cannot be done where a negotiable note has come into the hands of one who is not affected by the rights and equities existing between the original parties independently of the terms of the note itself; as where held by a purchaser before maturity without notice. The question is, whether such a defence to a promissory note is sanctioned by the principles of law and the adjudicated cases.

The principle upon which such evidence has been admitted seems to be this: That a promissory note as between the original parties to it, unless supported by a consideration, is *nudum pactum. Bank* v. *Topping,* 9 *Wend.* 273. Here arises the propriety of inquiring whether such a consideration existed. When the note states the consideration specifically, it may well be said that, to admit oral testimony to show a different consideration, is, in effect, to vary the terms of the written instrument by oral proof. *McClenaghan* v. *Hines,* 2 *Strob.* 122, is a case of this class. In that case, according to the express terms of the note, the payer promised to pay the amount due upon the notes of a third party belonging to the payee. The court held that an attempt to show by parol proof that the maker merely promised to take in hand the collection of such notes and to pay over only what was collected therein, was an attempt to change the contract as it appeared on the face of the note, and, therefore, inadmissible under the rule that precluded the alteration of the terms of written instruments by parol. But when the note expresses no consideration or a merely formal or general consideration, as by the usual words *value received,* or by similar general or formal expressions, it is evident that if the true consideration of the note rests in an agreement, written or

oral, between the parties, the proof of such agreement does not necessarily tend to change the terms of the note, although by showing the true consideration upon which it was given it may control the recovery upon the note.

*Barnes* v. *Shelton, Harp.* 33. In that case it was held that the maker of a promissory note could set up by way of discount or a breach of a parol contract what was the consideration of the note in suit. This decision was put upon the right of discount and not upon the broad principle of a failure of consideration.

*Gazoway* v. *Moore, Harp.* 401. In that case the note stated that it was given " for the hire of his negro man Abraham," and it was held that it could not be shown by parol evidence that a different rate of hiring was agreed upon conditionally. Here the note expressed the contract of the parties as it regarded the consideration for which it was given, and its expressed terms could not be contradicted by oral proof.

*Blakeley* v. *Hampton,* 3 *McC.* 469. The promissory note here was alleged to have been given for the balance due on a settlement of sundry accounts. The Circuit judge excluded the proof of the consideration of the note, and the decision was reversed on appeal. It would seem that the court were of opinion that the production of the written accounts by which it would appear that the sum stated in the note was entered by mistake, would not involve the objection of varying written instruments by parol proof. The principle upon which this view depended was that in effect the note and the written accounts on which it was based constituted one written instrument, so that one part could be corrected by reference to another. Although this case involved merely a question of the correction of a mistake, yet it recognizes the rule that this note and the agreement in virtue of which it is given, constitute, in view of the law, a single transaction. It may be that it was material for the purpose of correcting, at law, a mistake in the written instrument that the means of such correction should be in writing also; but where the question is, was there a consideration, and what was the consideration, when it leaves untouched

the terms of the instrument, no such necessity for exclusively written testimony could exist.

*Hagood* v. *Swords*, 2 *Bail.* 305. Here the court went a step further than in Barnes *v.* Shelton, and allowed as a defence to a promissory note proof that it was to be surrendered upon a certain contingency. Had the agreement to surrender the note been made subsequent to the making of the note, it would have been a clear case of discharge in the nature of payment that might have been proved by oral testimony alone. But the fact was that the agreement to surrender was part of the original agreement that formed the consideration of the note. Although Judge O'Neall lays stress on the fact that the parol proof offered related to matter of discharge alone in the nature of payment, yet as the agreement was cotemporaneous with the note, the case really involves the whole question, whether the recovery on the note could be affected by the discovery, through parol testimony, of the fact that the consideration of the note depended upon a contingency. *McClenaghan* v. *Hines*, 2 *Strob.* 122, has already been alluded to as a case where the note assumed to express the specific consideration on which it was founded. Clearly, in that case, parol proof of a *different* consideration would tend to vary the express declarations of the note itself, and, therefore, was inadmissible.

*Knight* v. *Knotts*, 8 *Rich.* 35, finally settled the question by placing the defence upon the true ground, namely, as involving the consideration of the note. The verbal agreement accompanying the note was held to be the consideration of the note, the two constituting but one agreement, and when the contract failed to give support to the note the latter could not justify a recovery.

In the present case the evidence admitted under objection tended to show that the parties had agreed at the time of the making of the note, that if the demand for which the note was given was rejected by the Ordinary, the note should not be paid. This was very different from placing the liability of the executor upon the actual validity of the debt, for the debt might be afterwards established, notwithstanding the decision of the Ordinary. The evidence was, therefore, an attempt to show that a different agreement was made than that which is expressed in the note,

and one that would place the claim on a different footing from that on which the law placed it. It is, therefore, like McClenaghan *v.* Hines and Gazoway *v.* Moore, a case where parol evidence was resorted to to vary the terms of a written instrument. The evidence was improperly received.

The next question to be considered is, what is the binding force and effect of the promise of the executor, expressed in the note in suit? Like all other promises and engagements, it must be upon adequate consideration to be capable of legal enforcement. We have here to inquire—1st, whether an executor can bind himself by his agreement or promise to pay a debt of his testator, so that an action can be maintained at law upon such promise; 2d, what consideration is necessary to support such a promise; and, 3d, what is the effect of such a promise?

The cases uniformly hold that a promise to pay a debt or legacy made by an executor is *nudum pactum*, unless supported by an adequate consideration. It is agreed that if such executor derives any benefit individually, or for the estate of his testator, or subject the promisee to disadvantage, the promise made upon such consideration binds him individually, and that an action at law can be maintained upon such promise and judgment obtained against such executor individually. It would seem also that in such a case the action may be brought against the defendant as executor, and judgment *de bonis propriis* will follow; and that in such case the executor cannot plead *plene administravit*, at least to defeat such judgment *de bonis propriis*. It is also held that if there be no such consideration as that just stated, yet if there be assets sufficient to pay such debt or legacy at the time of making such promise, it is obligatory, and may be enforced by an action at law against such executor individually or as executor, and the judgment as affecting such executor will be *de bonis propriis*.

The ground upon which the promise is held to be binding in law, when there are assets sufficient to pay the debt or legacy, is that the executor having sufficient assets for the purpose, is bound, both morally and by virtue of his office, to pay the debt or legacy, and such duty is a sufficient consideration to support a promise to pay, so that *indebitatus assumpsit* will lie upon it. The rule,

so far as it regards the payment of the debts of an intestate, applies equally to administrators. Nor does it make any difference whether the promise was made individually or as executor or administrator.

The consideration of forbearance generally appears in the cases where the executor has been held bound by his promise, independently of their being assets sufficient to pay at the time of making the promise. If the executor induces forbearance to sue on the part of the creditor of his testator by means of his promise, such consideration is sufficient and the executor is bound. There may be other instances of an adequate consideration than that of forbearance, but that is the consideration illustrated in the cases.

The authorities will be next considered. *Rann* v. *Hughes*, 7 *T. R.*, *note* 350, is a leading case, and holds that a promise of an administrator to pay a debt of his intestate *is nudum pactum*, unless supported by a consideration. That although the promises must, under the statute of frauds, be in writing, still a consideration is necessary to support it. The only kind of consideration discussed in the case is that of forbearance, which is recognized as sufficient, upon the ground that "if a person indebted in one right, in consideration of forbearance for a particular time, promises to pay in another right, the convenience will be a sufficient consideration to warrant an action against him or her in the latter right."

*Childs* v. *Monins*, 2 *B. & B.* 460. The action was upon a promissory note made by the defendants *as executors*, by which they *severally and jointly* promised to pay a certain sum on demand, *together with lawful interest*. It was held that the agreement to pay interest implied that the promise to pay was upon an agreement to forbear. This was based upon the idea that as the executor could not, by law, pay interest on the debts of his testator, the agreement to pay interest was to be regarded as something engaged on the part of the executor individually, and that it could only be ascribed to the motive of securing delay on the part of the creditor of the testator. It was also held that though the promise was made *as executor*, yet, from the nature of the transaction, it must be considered an individual obligation.

*Atkins* v. *Hill*, 1 *Cowp.* 284. This was an action of *assumpsit*

against an executor, brought by a legatee upon a promise to pay a legacy, made at a time when there were assets sufficient for its payment. It was held that such an action could be maintained at law. The sufficiency of the consideration to support the promise, was placed on the ground that the executor having assets sufficient to pay the legacy, was bound in consequence so to do, and such an obligation would support the promise to pay.

*Hawkes* v. *Saunders*, 1 *Cowp.* 289. That action was against the executor individually for a legacy, alleging sufficiency of assets and liability to pay at the time when the promise was made; also a promise of the executor. It was held that the action lay. Lord Mansfield held that the possession of assets and liability to pay was a sufficient consideration to support the promise.

*Trevenian* v. *Howell*, *Cro. Eliz.* 98, holds that a promise by an executor to pay when he has sufficient assets therefor, is good to support a judgment *de bonis propriis.*

*Bank* v. *Topping*, 9 *Wend.* 273, was an action against an administrator on a promissory note payable at sixty days. It was held that the delay of payment for sixty days could not be construed as an agreement to forbear, and that the promise was *nudum pactum*, unless there were assets at the time it was made.

*Walker* v. *Patterson*, 36 *Me.* 273. The same doctrine was held in that case as in the cases already referred to.

It must be conceded that had the defendant offered to prove that there were not assets sufficient to pay the debt at the time the promise to pay was made, such evidence could not have been excluded. It is true that if there had been some other consideration, such as forbearance, the question of assets would not have been material, but no such consideration is presented in the evidence. There is no agreement to pay interest as in Childs *v.* Monins. The payment was not deferred for any particular time as it was in Bank *v.* Topping, while in that case such delay was not regarded as evidence of an agreement to forbear. Under such circumstances it was clearly competent for defendant to have shown that there were no assets applicable to the payment of the note at the time the promise was made. If, then, such fact could be shown, could it not also be shown that there was

nothing due to the plaintiff, or that less was due than the amount demanded ?

It is the duty of the executor, coupled with his promise, which gives legal validity to such promise. If nothing was due to the plaintiff, no such duty existed to support a promise to pay. If less than the amount promised was due, the amount actually due was the measure of the duty of the executor and must be the measure of the recovery under his promise.

The Circuit judge was clearly in error in holding, in an action against the executor individually, as this must be considered, in which judgment was not sought *de bonis testatoris*, (*Ashby* v. *Ashby*, 7 *B. & C.* 444,) that the promise of the executor could not stand for want of consideration on the ground that the debt had been barred by the statute of limitations. A debt which becomes barred after the executor has qualified is a good consideration for a promise to pay, and there was nothing to prevent the executor from binding himself by a written promise to pay. Whether the executor could obtain remuneration out of the assets of the estate where he has failed to interpose the bar of the statute is a question not presented by this record. He could bind himself by his direct promise as well as indirectly by failing to plead the statute in an action seeking to charge the assets.

There must be a new trial.

McIVER, A. J., concurred.